**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
|       SULTAN R. SOLIMAN, | Chapter 7 |
|            Debtor. | Case No. 12-14444 (MG) |
| LEV VYSHEDSKY | |
|          Plaintiff, | |
|      v. | Adv. Pro. No. 13-01106 (MG) |
| SULTAN R. SOLIMAN, | |
|          Defendant. | |

**AMENDED MEMORANDUM OPINION AND ORDER DENYING WITHOUT**
**PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*A P P E A R A N C E S :*

LAZARUS & LAZARUS, P.C.
*Attorneys for Plaintiff Lev Vyshedsky*
240 Madison Avenue, 8th Floor
New York, NY 10016
By:    Gilbert A. Lazarus, Esq.

PERKINS COIE LLP
*Attorneys for Debtor-Defendant Sultan R. Soliman*
30 Rockefeller Plaza, 22nd Floor
New York, NY 10112
By:    Schuyler G. Carroll, Esq.
       Tina N. Moss, Esq.
       Manny J. Caixeiro, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       This adversary proceeding (the "Adversary Proceeding") arises from a fight during which

Sultan R. Soliman ("Soliman" or the "Debtor"), clearly the aggressor, bit Lev Vyshedsky

("Vyshedsky" or the "Plaintiff") on the nose (the "Assault").  Soliman pled guilty in New York

Criminal Court to two counts of assault in the third degree, a misdemeanor, and was sentenced to

probation and fifteen days of community service:  one count related to an assault on Andrzej Voy

Sobon, an individual who had previously obtained an order of protection against Soliman; and

the second count related to the assault on Vyshedsky, who unfortunately happened to be present

in the same elevator when Soliman assaulted Sobon.  Vyshedsky and Sobon sued Soliman for

damages, initially in New York State Supreme Court and then transferred to the New York City

Civil Court (the "Civil Court").  Vyshedsky obtained a default judgment against Soliman on a

single cause of action for assault and battery, and now through this Adversary Proceeding,

Vyshedsky seeks to obtain a declaration denying Soliman a discharge of the liability created by

the state court judgment.

Following the lengthy Civil Court litigation, during which Soliman appeared by counsel,

Soliman and his lawyer failed to appear for trial.  The Civil Court entered a default and held an

inquest (the "Inquest") to determine damages.  Soliman did not appear.  After hearing testimony

from Vyshedsky, the court entered a default judgment (the "Judgment") against Soliman in the

amount of $110,695,[1] consisting of $85,000 of compensatory damages and $25,000 of punitive

damages (plus costs).  Soliman then filed a chapter 7 bankruptcy petition.  Vyshedsky countered

with this Adversary Proceeding seeking to declare the debt non-dischargeable under section

523(a)(6) "for willful and malicious injury by the debtor to another [person] . . . ."  11 U.S.C.

§ 523(a)(6).

---

[1]    Vyshedsky asserts that the amount awarded was $110,735 (*see* Plaintiff's Facts ¶ 4; Vyshedsky Aff. Ex.
H); Soliman contends that the Judgment was either $110,000 or $110,695 (*see* Defendant's Facts ¶ 13; Moss Decl.
Ex. L (New York Civil Court Civil Judgment, listing Judgment amount of $110,695)).

This Court lifted the automatic stay to permit Soliman to file a motion in state court to vacate the Judgment; the motion was denied in a Decision and Order, dated December 13, 2013. The Civil Court concluded:

> [T]he defendant cannot establish any potentially meritorious defense to the action.  On March 7, 2001, in the Criminal Court of the City of New York, he was convicted upon his plea of guilty, of assault in the third degree, a violation of Penal Law § 120.00.  In his plea allocution, the transcript of which was submitted by the plaintiff, the defendant admitted that he assaulted the plaintiff on July 27, 2000, by biting his nose.  The plaintiff has demonstrated that the guilty plea should be given collateral estoppel effect in this subsequent civil proceeding.

(Moss Decl., ECF Doc. # 36, Ex. N.)  Soliman sought to further stay the Adversary Proceeding to appeal this decision (*see* ECF Doc. # 22); the Court denied his motion and entered a scheduling order for the parties' summary judgment motions (*see* ECF Doc. # 30).

The parties have now filed cross motions for summary judgment.[2]  Vyshedsky seeks summary judgment denying Soliman a discharge based on collateral estoppel.  Soliman seeks dismissal of the Adversary Proceeding.  The parties contest whether collateral estoppel applies to the Judgment based on the claim for assault and battery.  Soliman argues that collateral estoppel principles do not apply because the Judgment resulted from a default judgment and, under controlling New York law, it should not be given preclusive effect.  Vyshedsky argues that the Judgment, supported by Soliman's guilty plea, should be given collateral estoppel effect.

The application of collateral estoppel in this case is complicated because it requires the Court to consider the effect of two separate state court proceedings—first, the civil action filed

---

[2]        Pending before the Court is the Plaintiff's motion for summary judgment (the "Plaintiff's Motion," ECF Doc. # 32).  In support of the Plaintiff's Motion, the Plaintiff filed his affidavit (the "Vyshedsky Aff.," ECF Doc. # 33), the *Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment* (the "Plaintiff's Facts," ECF Doc. # 34), and the Declaration of Gilbert A. Lazarus, Esq. (the "Lazarus Decl.," ECF Doc. # 35).  The Debtor filed a cross-motion for summary judgment (the "Debtor's Motion," ECF Doc. # 36).  In support of the Debtor's Motion, the Debtor filed the Declaration of Tina Moss (the "Moss Decl.," ECF Doc. # 36) and the *Debtor's Statement of Undisputed Facts* (the "Debtor's Facts," ECF Doc. # 38).

after Soliman's guilty plea, in which the Judgment for damages was entered for assault and battery; and second, the criminal case in which Soliman pled guilty and judgment was entered for assault in the third degree.  To obtain a judgment based on collateral estoppel in this Adversary Proceeding, Vyshedsky has the burden of establishing that the issues in the current denial of discharge action and in the prior state court action are "identical" and were necessary to the judgment and actually determined by the state court; assuming Vyshedsky satisfies his burden, to avoid application of collateral estoppel, Soliman has the burden of establishing that he was not given a full and fair opportunity to litigate the issues previously.

Because the state law civil assault and battery cause of action did not require Vyshedsky to establish that Soliman intended to injure Vyshedsky—a required element of the denial of discharge cause of action—the Judgment in the civil case is not alone sufficient to trigger collateral estoppel entitling Vyshedsky to judgment declaring the debt non-dischargeable.  The issue is whether the missing element (intent to injure) is supplied by collateral estoppel from Soliman's guilty plea.  This is a close question on the record before the Court.  The Court has concluded that it will schedule an evidentiary hearing limited to the issue of whether Soliman's actions were "a deliberate and intentional injury" to Vyshedsky—"not merely a deliberate or intentional act that leads to injury."  *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  As explained below, to prevail on his denial of discharge claim, Vyshedsky must establish by a preponderance of the evidence that Soliman (1) intended to injure Vyshedsky, *"or engaged in conduct that was substantially certain to cause injury,"* *Hough v. Margulies (In re Margulies)*, Adv. Proc. No. 10-04050 (SMB), 2103 WL 2149610, at *3 (Bankr. S.D.N.Y. May 16, 2013) (emphasis added), and (2) "acted wrongfully and without just cause or excuse, even in the absence of personal hatred, spite or ill will."  *Id.* at *4 (internal quotations and citations omitted).

The Debtor's principal argument in this Court has focused on the amount of damages awarded in the Judgment. His counsel argues that preclusive effect should not be given to the determination of the amount of damages during the state court inquest in which Soliman did not appear, although the state court found that Soliman had proper notice. The Judgment established the amount of Soliman's debt. He cannot obtain a (re)trial here on the amount of the debt. The elements of the denial of discharge claim focus solely on the Debtor's conduct, not on the amount of the debt that was established by the state court judgment, which is final and conclusive in this action.

## I.    BACKGROUND

Soliman assaulted Vyshedsky on July 27, 2000. (*See* Plaintiff's Facts ¶ 1; Defendant's Facts ¶ 1.) On March 7, 2001, Soliman pled guilty to Assault in the Third Degree, a misdemeanor. (*See* Plaintiff's Facts ¶ 2; Defendant's Facts ¶ 1; Moss Decl. Ex. A ("Plea Transcript" at 2–5); Vyshedsky Decl. Ex. E (same).) In his plea allocution, Soliman admitted that he assaulted Vyshedsky on July 27, 2000 by biting his nose. (*See* Vyshedsky Aff. Ex. D.; Moss Decl. Ex. A.) Vyshedsky filed his civil action in New York State Supreme Court on July 5, 2001, seeking damages for assault and battery. (*See* Plaintiff's Facts ¶ 3; Defendant's Facts ¶ 2.) The case was transferred to the Civil Court on February 6, 2004. (*See* Defendant's Facts ¶ 3.)

After Soliman and his counsel failed to appear for the scheduled trial, the court conducted the Inquest at which Soliman and his counsel failed to appear.[3] On July 21, 2011, the Civil Court entered the Judgment against the Debtor in the amount of $110,695. (*See* Plaintiff's Facts ¶ 4; Defendant's Facts ¶¶ 12–13; Vyshedsky Aff. Ex. H, I; Moss Decl. Ex. J.) The Judgment was not appealed, vacated, or modified and is now final. Soliman contends that he had no notice

---

[3]       The Court has not been supplied with a transcript from the Inquest.

of the trial or the entry of the Judgment following the Inquest until he prepared to file his chapter 7 petition; he blames his then-attorney, Dan Cherner, claiming that Cherner stopped representing Soliman but failed to inform Soliman of this fact.  The Debtor also argues that, because Cherner vacated his law office, the Debtor never received notice of the trial or of the Inquest from the Civil Court.

After the bankruptcy case was filed, the Debtor moved for relief from the automatic stay to return to state court seeking to vacate the Judgment (the "Lift Stay Motion," ECF Doc. # 12, Case No. 12-14444).  The Court entered an *Order Granting Debtor's Motion for Relief From Automatic Stay to Vacate Default Judgment* (the "Order," ECF Doc. # 17, Case No. 12-14444). The Debtor then filed a *Motion to Stay Adversary Proceeding* (the "First Stay Motion," ECF Doc. # 18), which was unopposed.  On October 10, 2013, the Court entered the *Order Granting Motion to Stay Adversary Proceeding* (the "Stay Order," ECF Doc. # 21), which stayed the Adversary Proceeding for six months and required the Defendant to commence an action in state court to seek to avoid the Judgment.

On October 21, 2013, the Debtor moved to vacate the Judgment in Civil Court (the "Motion to Vacate"), which the Plaintiff opposed.  On December 13, 2013, the Civil Court denied the Debtor's motion, finding that the Debtor failed to meet his burden of showing that he (1) had a reasonable excuse for his failure to appear in the original proceeding and (2) has a potentially meritorious defense to the underlying action.  (*See* ECF Doc. # 25-1.)  The Civil Court found that, even if the Debtor could demonstrate a reasonable excuse for his failure to appear at the Inquest, he cannot establish any potentially meritorious defense to the action because of his guilty plea.  Consequently, the Civil Court determined that the guilty plea should be given collateral estoppel effect in the subsequent civil proceeding.

At a hearing in this Court on April 10, 2014, the parties agreed to file cross motions for summary judgment pursuant to an agreed briefing schedule. Briefing was completed on June 16, 2014.

The parties' arguments in their respective summary judgment motions are as follows: The Plaintiff argues that the Debtor is collaterally estopped from relitigating the Civil Court's judgment of liability and damages. The Debtor, in turn, argues that the Judgment should not be given collateral estoppel effect in this proceeding because, under New York law, default judgments are not entitled to collateral estoppel effect. Additionally, the Debtor asserts that the record does not support the Civil Court's damages determination. In the alternative, the Debtor argues that should the Court find that his debt is nondischargeable, it should make an independent determination of the amount of the debt.

## II.    DISCUSSION

### A.    Summary Judgment

Federal Rule of Civil Procedure 56(a), made applicable by Bankruptcy Rule 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To successfully assert that a fact is not in dispute or cannot be disputed, a movant must

> cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).  "The party seeking summary judgment bears the burden of establishing

that no genuine issue of material fact exists and that the undisputed facts establish [the movant's]

right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d

Cir. 1995); s*ee also McHale v. Boulder Capital LLC (In re The 1031 Tax Grp., LLC)*, 439 B.R.

47, 58 (Bankr. S.D.N.Y. 2010).

### B.    Collateral Estoppel Standard

"[T]he preclusive effect of a state court determination in a subsequent federal action is

determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In*

*re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738).  Thus, New York's

preclusion rules govern this dispute.  In New York, collateral estoppel prevents a party from

relitigating an issue that was decided in an earlier proceeding where the party against whom

preclusion is to be applied had a full and fair opportunity to litigate the issue.  *See Kaufman v. Eli*

*Lilly & Co.*, 65 N.Y.2d 449, 456 (1985).  The party invoking collateral estoppel bears the burden

of establishing the identity of the issues in the current action and the previous action, but the

party opposing collateral estoppel bears the burden of establishing that it was not afforded a full

and fair opportunity to litigate the issue previously.  *See id.*  "Collateral estoppel is a doctrine

based on general notions of fairness involving a practical inquiry into the realities of the

litigation . . . ; it should never be rigidly or mechanically applied . . . ." *Halyalkar v. Board of*

*Regents of State of N.Y.*, 72 N.Y.2d 261, 268–69 (1988) (citations omitted) (declining to give

collateral estoppel effect to earlier consent order pleading guilty in New Jersey medical board

disciplinary proceeding in subsequent New York medical license suspension proceeding).

       1.    *It Is Unclear Whether New York Courts Give Collateral Estoppel Effect to Default Judgments*

It is not clear whether New York courts would give collateral estoppel effect to the Judgment entered by the Civil Court in this case. In *Evans v. Ottimo*, 469 F.3d 278, 282–83 (2d Cir. 2006), the court concluded that New York courts give collateral estoppel effect to default judgments, but that conclusion appears questionable. Three earlier decisions of the New York Court of Appeals strongly suggest that collateral estoppel should *not* normally be applied to default judgments. *See D'Arata v. N. Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667 (1990) (applying RESTATEMENT (SECOND) OF JUDGMENTS § 27 & *cmt*. e); *Halyalkar*, 72 N.Y.2d at 267–68 (applying RESTATEMENT (SECOND) OF JUDGMENTS § 27 & *cmt*. e); *Kaufman*, 65 N.Y.2d at 456–57 (stating that "[a]n issue is not actually litigated if, for example, there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation" (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 *cmts*. d–e")). Section 27 of the Restatement provides, in the black letter, that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." RESTATEMENT (SECOND) OF JUDGMENTS § 27. But comment e provides, in relevant part: "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention." RESTATEMENT (SECOND) OF JUDGMENTS § 27 *cmt*. e.

       Restatement section 27 and comment e thereof are consistent with the federal collateral estoppel rule that, subject to certain exceptions, does not give collateral estoppel effect to default

judgments. *See Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 122–23 (Bankr. S.D.N.Y. 2008)

(discussing federal collateral estoppel rule).  Federal courts have recognized exceptions to this

rule where a default judgment is entered as a sanction or after protracted litigation.  *See Wolstein*

*v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214–15 (3d Cir. 1997) ("We do not hesitate in

holding that a party . . . who deliberately prevents resolution of a lawsuit, should be deemed to

have actually litigated an issue for purposes of collateral estoppel application.  In doing so, we

join with Ninth and Eleventh Circuit courts of appeals in holding that, under these circumstances,

the actual litigation requirement is met.  To hold otherwise would encourage behavior similar to

[the debtor's] and give litigants who abuse the processes and dignity of the court an undeserved

second bite at the apple."); *Bush v. Balfour Beatty Bahamas, Ltd.* (*In re Bush)*, 62 F.3d 1319,

1324 (11th Cir. 1995); *Fed. Deposit Ins. Corp. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th

Cir.1995).

While the Court has not found any New York state court decisions applying similar

exceptions to the general rule against giving collateral estoppel effect to a default judgment, the

circumstances in *Vyshedsky v. Soliman* could readily call for application of such an exception.

The state court lawsuit was pending for ten years before the default judgment was entered after

Soliman and his lawyer failed to appear for trial.  The Civil Court denied the motion to vacate

the Judgment, rejecting Soliman's arguments relating to his failure to appear at trial.

Some states do give collateral estoppel effect to default judgments.  *See Wharton*, 396

B.R. at 123–26 (concluding that Florida courts give collateral estoppel effect to default

judgments).  While Second Circuit cases such as *Evans* are binding on this Court on issues of

New York law, absent a later decision by the New York Court of Appeals, it is unnecessary to

determine whether the *Vyshedsky v. Soliman* Judgment is entitled to collateral estoppel effect

because, under New York law, Soliman's criminal conviction must be given collateral estoppel effect—although not to the extent that this dispute could be resolved on summary judgment.

Default judgments often raise the issue whether the defendant had a full and fair opportunity to litigate an issue. The doctrine of collateral estoppel precludes a party from relitigating "an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291 (1981). "[T]he party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman*, 65 N.Y.2d at 456. The issue is of greater concern in cases involving a so-called "pure default," where the defendant never responds to the complaint or appears in the action. Where, as here, the defendant appeared and defended the action for a time, but later abandoned the defense, the issues of notice and service of pleadings is less of a concern. In this case, Soliman contends that his state court lawyer failed to inform him about the state court proceedings, in particular of the date set for trial and, subsequently, of the Inquest. While these issues are troubling, Soliman raised them in the Civil Court in his motion to vacate the Judgment; that court rejected the arguments and denied the motion to vacate. Though Soliman filed a notice of appeal of that denial (*see* ECF Doc. ## 22, 23), his effort to vacate the Judgment is not determinative here. Because this Court is not basing its collateral estoppel decision on the default judgment, but is instead focusing on collateral estoppel from the guilty plea to the criminal charge, as to which Soliman unquestionably had notice and an opportunity to fully defend, the full and fair opportunity to litigate prong does not affect the outcome.

2.    *New York Courts Give Collateral Estoppel Effect to Criminal Convictions*

The collateral estoppel effect of the Debtor's guilty plea in a criminal proceeding is governed by New York law. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987). New York gives collateral estoppel effect to criminal guilty pleas in subsequent civil proceedings addressing the same incident. *See Olsson v. MacDonald*, 792 N.Y.S.2d 250, 250 (App Div. 2005) ("A party in a civil action may be collaterally estopped from challenging liability when that party has pleaded guilty to criminal charges addressed to the same incident.") (citations omitted); *Nat'l Bank of Pakistan v. Basham*, 539 N.Y.S.2d 347, 347 (App. Div. 1989). In *Olsson*, the appellate division concluded that the plaintiff was entitled to partial summary judgment on the issue of liability in his civil damages action seeking to recover damages from defendant's assault. *Olsson*, 792 N.Y.S.2d at 251. As in this case, the defendant had been convicted on his guilty plea for assault in the third degree. Here, too, the Debtor is collaterally estopped from challenging his guilty plea in this Adversary Proceeding. But, as discussed below, the question remains what issues were actually determined by the guilty plea.

At least one New York court has addressed issues similar to those in this case. In *D'Arata*, the New York Court of Appeals gave collateral estoppel effect to a criminal conviction in a civil action filed after a default judgment was entered in an earlier civil action. *See D'Arata*, 76 N.Y.2d at 662. That earlier default judgment awarded the plaintiff damages for injuries caused by the defendant's criminal conduct. *Id.* The Defendant, Wayne Luke, shot the plaintiff, Robert D'Arata, and was later convicted of assault in the first degree. *Id.* at 662–63. D'Arata brought a damages action against Luke for assault, and obtained a default judgment for $325,000 when Luke didn't answer the complaint. *Id.* at 663. When Luke failed to pay the judgment, D'Arata brought an action against Luke's insurer. *Id.* The insurer moved to dismiss arguing that

12

collateral estoppel from Luke's criminal conviction barred D'Arata's action against the insurer. *Id.* The insurer argued that Luke's criminal conviction established Luke's intent to injure D'Arata. *Id.* at 666. The insurance policy, as is typical, excluded coverage for intentional wrongful acts. *Id.* D'Arata argued that he was entitled to relitigate Luke's intent to injure in the action against the insurer. *Id.* at 667. The trial court denied the insurer's motion to dismiss. The appellate division reversed the trial court and then the Court of Appeals affirmed the appellate division.

The Court of Appeals determined that based on Luke's criminal conviction for assault in the first degree, collateral estoppel applied to the issue of Luke's intent to injure. The Court explained the applicable standards for a New York court to give collateral estoppel effect:

> The closer question is whether defendant has proven the requisite identity of the issue between this case and the prior criminal proceeding. First, of course—reflecting the doctrine's underlying purpose of preventing repetitious litigation of disputes which are essentially the same—there must be an identity between the particular matter in the second action and that presented in the first (*see,* Restatement [Second] of Judgments § 27, comment c). And it must be shown that this identical issue was necessarily decided in the first proceeding and is conclusive in the subsequent action (*id.*, § 27). Here, these two requirements are satisfied. A central issue in the criminal proceeding was whether [the defendant] caused injury to plaintiff with "intent to cause serious physical injury to another person" (Penal Law § 120.10[1]).
>
> . . . .
>
> But there is a further requirement for establishing issue identity—i.e., that the issue have [sic] been "actually litigated" in the first proceeding (*see, Kaufman v. Lilly & Co.,* [citing Restatement (Second) of Judgments § 27]). Generally, for "a question to have been actually litigated" so as to satisfy the identity requirement, it "must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." (*Matter of Halyalkar v. Board of Regents*, 72 N.Y.2d 261,

13

268, 532 N.Y.S.2d 85, 527 N.E.2d 1222*; see,* Restatement [Second] of
Judgments § 27, comments d, e.)

*Id.* at 666–67 (citations in original).

The holding in *D'Arata* is significant in this case for several reasons.  First, while New
York courts have expressed reluctance to give collateral estoppel effect to a default judgment,
collateral estoppel from an earlier criminal conviction does apply and prevents relitigation in a
civil proceeding of issues that were resolved in an earlier criminal case.  Collateral estoppel
applied in *D'Arata*, where the crucial fact—the criminal defendant's intent to cause serious
injury—was determined in the earlier criminal conviction.  Questions remain here, however,
about what issues Soliman's criminal conviction resolved that are identical to issues in the denial
of discharge Adversary Proceeding, and, more importantly, what issues in the denial of discharge
Adversary Proceeding were not resolved by the criminal case?

### C.        The Elements of Vyshedsky's Assault and Battery Damages Claim

Vyshedsky's state court complaint included a single count seeking damages for assault
and battery.  These are actually two separate but related common law torts.

> To sustain a cause of action to recover damages for assault, there must be
> proof of physical conduct placing the plaintiff in imminent apprehension
> of harmful contact.   The elements of a cause of action [to recover
> damages] for battery are bodily contact, made with intent, and offensive in
> nature.

*Fugazy v. Corbetta*, 825 N.Y.S.2d 120, 122 (App. Div. 2006) (citations omitted); *see also*
*Bastein v. Sotto*, 749 N.Y.S. 538, 529 (App. Div. 2002) ("To sustain a cause of action to recover
damages for assault, there must be proof of physical conduct placing the plaintiff in imminent
apprehension of harmful contact.  To recover damages for battery, a plaintiff must prove that
there was bodily contact, that the contact was offensive, and that the defendant intended to make
the contact without the plaintiff's consent.") (citations omitted).

What should be apparent from these elements of the state law assault and battery torts is that intent to cause injury (as opposed to intent to threaten or engage in an offensive act) is not an essential element of the claim. As explained below, intent to cause injury is an essential element of the denial of discharge claim under section 523(a)(6). Because elements of the claims are not identical, collateral estoppel could not be given to the default judgment for assault and battery to support granting judgment here in favor of Vyshedsky. But collateral estoppel could still apply to discrete issues here. The elements of the assault in the third degree criminal charge, to which Soliman pleaded guilty, are examined next.

### D.      Legal Elements of the Crime of Assault in the Third Degree

Soliman pled guilty to the misdemeanor of assault in the third degree. The elements of the crime are set forth in N.Y. Penal Law § 120.00:

A person is guilty of assault in the third degree when:

1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or

2. He recklessly causes physical injury to another person; or

3. With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

Assault in the third degree is a class A misdemeanor.

N.Y. PENAL LAW § 120.00.

The cross motions for summary judgment attach many exhibits, but the document charging Soliman with assault in the third degree is not among them. As can be seen above, only subsection 120.00[1] includes a requirement that intent to cause physical injury is an element of the crime. If Soliman specifically pled guilty to an assault charge under subsection 120.00[1], the Court could likely conclude that the requirement of intent to injure has been established. The

transcript of Soliman's guilty plea allocation is an exhibit, but it does not indicate which

subsection(s) of section 120.00 were charged.  Soliman simply admitted that he bit Vyshedsky

on the nose.  Photographs of Vyshedsky taken after the assault clearly show Vyshedsky's

physical injury, including stitching of his nose wounds.  There is no suggestion that Soliman

used any deadly weapon or dangerous instrument, so Penal Law § 120.00 subsections [1] and [2]

are the only likely candidates for the charges.  Subsection [1] satisfies the intent requirement for

a section 523(a)(6) denial of discharge.  Further analysis is required whether to determine

whether subsection [2] also satisfies the requirement.

N.Y. Penal Law § 15.05 defines four separate culpable mental states.  The section

provides:

The following definitions are applicable to this chapter:

1. "Intentionally."  A person acts intentionally with respect to a result or to
conduct described by a statute defining an offense when his conscious
objective is to cause such result or to engage in such conduct.

2. "Knowingly."  A person acts knowingly with respect to conduct or to a
circumstance described by a statute defining an offense when he is aware
that his conduct is of such nature or that such circumstance exists.

3. "Recklessly."  A person acts recklessly with respect to a result or to a
circumstance described by a statute defining an offense when he is aware
of and consciously disregards a substantial and unjustifiable risk that such
result will occur or that such circumstance exists.  The risk must be of
such nature and degree that disregard thereof constitutes a gross deviation
from the standard of conduct that a reasonable person would observe in
the situation.  A person who creates such a risk but is unaware thereof
solely by reason of voluntary intoxication also acts recklessly with respect
thereto.

4. "Criminal negligence."  A person acts with criminal negligence with
respect to a result or to a circumstance described by a statute defining an
offense when he fails to perceive a substantial and unjustifiable risk that
such result will occur or that such circumstance exists.  The risk must be
of such nature and degree that the failure to perceive it constitutes a gross

deviation from the standard of care that a reasonable person would observe in the situation.

N.Y. PENAL LAW § 15.05.

Since Soliman's conviction may have been under section 120.00[2], the Court considers below whether the mental state of "recklessly" meets the requirements for "willful and malicious injury by the debtor" under section 523(a)(6).[4]

### E.    Legal Elements of a Denial of Discharge Claim Under Section 523(a)(6)

Consistent with the Bankruptcy Code's fresh start policy, exceptions to discharge must be construed narrowly against the creditor in favor of the debtor.  *Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) (citing *Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996)).  A bankruptcy discharge covers all debts arising pre-petition, with the exception of a certain specifically enumerated debts provided in sections 523 and 727 of the Bankruptcy Code.  Here we are concerned only with section 523(a)(6).

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity" (i.e., person).  11 U.S.C. § 523(a)(6); *see also* 11 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and United State trustee.") Section 523(a)(6) uses the word "entity" instead of "person" because the former is broader than the latter.  4 COLLIER ON BANKRUPTCY ¶ 523.12 (16th ed. 2009).  The Plaintiff bears the burden of proving that the Debtor acted willfully and maliciously by a preponderance of the evidence.

---

[4]    The possibility of alternative determinations raises difficulties in granting collateral estoppel effect to the judgment.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 *cmt. i* ("*Alternative determinations by court of first instance.*  If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone. . . .  First, a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. Second, and of critical importance, the losing party, although entitled to appeal from both determinations, might be dissuaded from doing so because of the likelihood that at least one of them would be upheld and the other not even reached.").

*Grogan v. Garner*, 498 U.S. 279, 290–91 (1991); *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

        *1.*    *Willfulness*

To prove that the debtor acted willfully under section 523(a)(6), a plaintiff must demonstrate that the debtor deliberately intended to cause injury, not just that the defendant committed an intentional act that unintentionally inflicted injury.  *See Kawaauhau*, 523 U.S. at 61 ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.").  A person intends to cause injury when he "desires to cause consequences of his act, or . . . he believes that the consequences are substantially certain to result from it."  RESTATEMENT (SECOND) OF TORTS § 8A (1965).  "[T]o satisfy the 'willful' element of Bankruptcy Code § 523(a)(6), the plaintiff must prove by a preponderance of the evidence that the debtor actually intended to injure the victim, or engaged in conduct that was substantially certain to cause injury."  *In re Margulies*, 2013 WL 2149610, at *3 (citing *Jendusa–Nicolai v. Larsen*, 677 F .3d 320, 324 (7th Cir. 2012); *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012); *Morris v. Brown (In re Brown)*, 489 F. App'x 890, 895 (6th Cir. 2012); *Guerra & Moore Ltd. v. Cantu (In re Cantu)*, 389 F. App'x 342, 344–45 (5th Cir. 2010); *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *Blocker v. Patch (In re Patch)*, 526 F .3d 1176, 1180 (8th Cir. 2008); *In re Granoff*, 250 F. App'x 494, 495 (3d Cir. 2007); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004)).

        *2.*    *Malice*

To establish that the Debtor acted maliciously, a plaintiff must prove that the debtor acted wrongfully and "without just cause or excuse, even in the absence of personal hatred, spite or ill

will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87–88 (2d Cir. 1996). Courts

look to the totality of the circumstances to determine whether a debtor acted with malice. *Id.* at

88 ("Implied malice may be demonstrated 'by the acts and conduct of the debtor in the context of

[the] surrounding circumstances.'" (quoting *First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66

F.3d 664, 668 (4th Cir. 1995))). Malice is implied when "anyone of reasonable intelligence

knows that the act in question is contrary to commonly accepted duties in the ordinary

relationships among people, and injurious to another." *Navistar Fin. Corp. v. Stelluti (In re

Stelluti)*, 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994) (internal quotation marks omitted), *aff'd*, 94

F.3d 84 (2d Cir. 1996).

The Debtor pled guilty to misdemeanor assault in the third degree under Penal

Law § 120.00, although it is unclear whether he was charged under a particular subsection,

specifically [1] or [2]. If Soliman was charged and specifically pled guilty to a charge under

section 120.00[1], his actual intent to cause injury has been established. If Soliman was charged

and pled guilty under section 120.00[2]—or if it impossible to tell under which of the two

subsections he was charged and pled guilty—the situation is less clear. A conviction under

section 120.00[2] requires that Soliman recklessly caused physical injury to another person.

N.Y. Penal Law section 15.05[3] defines such reckless conduct as "an offense when he is aware

of and consciously disregards a substantial and unjustifiable risk that such result will occur or

that such circumstance exists. The risk must be of such nature and degree that disregard thereof

constitutes a gross deviation from the standard of conduct that a reasonable person would

observe in the situation." N.Y. Penal Law § 15.05[3].

The Supreme Court ruled in *Kawaauhau*, 523 U.S. at 64, that "debts arising from

recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." But the

Court did not discuss the term "malicious," or conclude that a "reckless" mental state under a

penal law was inconsistent with the concept of malice under section 523(a)(6).  *See In re*

*Margulies*, 2013 WL 2149610, at *4 n.5.  *But see In re Alexander*, 503 B.R. 19, 22 (Bankr.

W.D.N.Y. 2013) ("New York Penal Law § 120.00(2) provides that [Assault in the Third Degree]

occurs when a defendant 'recklessly causes physical injury to another person.'  Recklessness

alone does not establish an injury that is willful and malicious." (citation omitted)).  Whether the

summary judgment record here is sufficient to conclude that Soliman's debt to Vyshedsky is

excepted from discharge is a close question.  In *Margulies*, the court denied the debtor's

discharge but only after conducting a trial, even though the defendant there also pled guilty to

assault in the third degree.  The Court believes it will benefit from a full record before ruling in

this case.

3.    *Whether the Amount of the Debt May Be Challenged*

While the Court has deferred ruling on whether the debt is non-dischargeable, it is

appropriate now to address the issue that Soliman's counsel pressed:  whether the amount of the

Judgment conclusively determines the amount of the debt.  The Debtor asserts that the Court

should make an independent determination of the amount of damages owed to the Plaintiff.  The

Court disagrees.  It is the nature of the debt that renders it non-dischargeable; the fact that the

Judgment resulted from the Debtor's default is not determinative.  The Court's role is to

determine whether a debt is non-dischargeable under the Bankruptcy Code.  If the Court

concludes that the debt is non-dischargeable, the Court must recognize, by reason of claim

preclusion, the state court's damages determination in the Judgment.  *See, e.g.*, *In re Comer*, 723

F.2d 737, 740 (9th Cir. 1984) (holding that the bankruptcy court properly refused to admit

evidence attacking the extent of obligation because evidence of amount of default judgment is

irrelevant to determination of the nature of the debt, i.e., whether the debt is non-dischargeable under section 523, and res judicata barred the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation); *In re Yeager*, 500 B.R. 547, 555–56 (Bankr. S.D. Ohio 2013) (concluding that, though a state court's prior judgment in favor of a plaintiff was not preclusive on the "willful and malicious" nature of the debtor's action for debt dischargeability purposes, the judgment was nonetheless binding on the bankruptcy court with regard to the debtor's liability to the plaintiff and the amount of that liability); *In re Robinson*, 242 B.R. 380, 388 (Bankr. N.D. Ohio 1999) (holding that under Ohio law, a judgment treated by the parties as a default judgment, while not entitled to collateral estoppel effect with respect to whether the debtor acted willfully or maliciously, did collaterally estop either party from relitigating the question of the amount of the creditor's damages); *In re Sullivan*, 122 B.R. 720, 723 (Bankr. D. Minn. 1991) (finding that a default judgment entered against the debtor barred the debtor under res judicata from contesting the existence, validity, and amount of his debt to the creditor); *In re Moccio*, 41 B.R. 268, 272 (Bankr. D.N.J. 1984) (stating without substantial discussion that a default judgment had no binding effect in a nondischargeability action under section 532(a)(6) with respect to the debtor's willfulness, although it did have res judicata effect as to the amount of the debtor's liability).

Therefore, if the Court concludes that the Judgment is not dischargeable, the amount of the debt was conclusively established by the state court default Judgment. Indeed, the Civil Court refused to vacate the Judgment in its 2013 Decision and Order. While Soliman did take an appeal from that decision, the appeal has not yet been resolved.. This Court does not review decisions reached by the state court.

## III. CONCLUSION

For the reasons explained above, Vyshedsky's Motion for Summary Judgment is

**DENIED WITHOUT PREJUDICE.**  Soliman's Cross-Motion for Summary Judgment is

**DENIED.**  The Court will enter a separate order setting a case management conference to

schedule future proceedings.[5]

**IT IS SO ORDERED**.

Dated: September 4, 2014
      New York, New York

                                  *Martin Glenn*
                                  MARTIN GLENN
             United States Bankruptcy Judge

---

[5]     The Court expresses its appreciation to Soliman's *pro bono* counsel in this adversary proceeding—Schuyler G. Carroll, Esq., Tina N. Moss, Esq., and Manny J. Caixeiro, Esq. of Perkins Coie LLP—for their excellent representation of the debtor-defendant.