**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

Chapter 7
Case No. 12-14444 (MG)

SULTAN R. SOLIMAN,

Debtor.

LEV VYSHEDSKY

Plaintiff,

Adv. Pro. No. 13-01106 (MG)

v.

SULTAN R. SOLIMAN,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DISCHARGE OF PLAINTIFF'S**
**STATE COURT JUDGMENT AGAINST THE DEBTOR**

*A P P E A R A N C E S :*

PERKINS COIE LLP
*Attorneys for the Debtor/Defendant*
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112
By:     Tina N. Moss, Esq.
            Manny Joseph Caixeiro, Esq.

LAZARUS & LAZARUS, P.C.
*Attorneys for the Plaintiff*
240 Madison Avenue, 8th Floor
New York, New York 10016
By:     Gilbert A. Lazarus, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding arises from an assault during which Sultan R. Soliman

("Soliman" or the "Debtor") forcefully bit Lev Vyshedsky ("Vyshedsky" or the "Plaintiff,"

together with the Debtor, the "Parties") on the nose (the "Assault").  Photographs of Vyshedsky

1

taken after he was hospitalized and treated show that Soliman's bite caused serious injury to Vyshedsky's nose, requiring numerous stitches to close the wounds. Soliman pled guilty in New York Criminal Court to the crime of assault in the third degree. He was sentenced to probation and fifteen (15) days community service.[1] Vyshedsky sued Soliman for damages, initially in New York State Supreme Court and then transferred to the New York City Civil Court (the "Civil Court"). Following a lengthy litigation and Soliman's ultimate default, the Civil Court entered a default judgment (the "Judgment") against Soliman in the amount of $110,695, consisting of $85,000 of compensatory damages and $25,000 of punitive damages (plus costs). Thereafter, Soliman filed a chapter 7 bankruptcy petition. Vyshedsky countered with this adversary proceeding seeking to declare the debt, arising from the Judgment, non-dischargeable on the ground that the Debtor caused his injury "willfully and maliciously." 11 U.S.C. § 523(a)(6). On September 4, 2014, the Court denied the Parties' cross-motions for summary judgment without prejudice.[2]

On September 16, 2015, the Court held an evidentiary hearing to determine whether Soliman's actions caused "a deliberate and intentional injury" to Vyshedsky, "not merely a deliberate or intentional act that leads to injury." *See Soliman*, 515 B.R. at 183; *see also Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Only two witnesses testified at trial: Soliman and Vyshedsky. The Parties presented conflicting accounts of the events that gave rise to the Assault. During trial, Soliman asserted self-defense as an affirmative defense to the denial of discharge claim. As explained below, the Court concludes that Soliman's guilty plea to the assault charge precludes him from asserting self-defense here. But even if preclusion does not

---

[1]    Soliman also pled guilty to a second count of assault in the third degree involving a separate incident against another individual, Andrzej Voy Sobon ("Sobon"), who is not party to this adversary proceeding.

[2]    *Amended Memorandum Opinion and Order Denying Without Prejudice Plaintiff's Motion For Summary Judgment* (the "Summary Judgment Opinion," ECF Doc. # 42); *Vyshedsky v. Soliman (In re Soliman)*, 515 B.R. 179 (Bankr. S.D.N.Y. 2014).

bar a claim of self-defense, the Court concludes that Soliman failed to carry his burden of proof

with respect to self-defense.  The Court finds that Vyshedsky established by a preponderance of

the evidence that Soliman caused Vydshedsky's injury willfully and maliciously.

Based on the Court's opportunity to see and hear the Parties' testimony, the Court finds

that Soliman's testimony lacked credibility; Vyshedsky's testimony, on the other hand, was

credible.  Accordingly, to the extent there were any discrepancies between Soliman's testimony,

on the one hand, and the Vysehdsky's testimony, on the other hand, the Court credits

Vysehdsky's testimony.

The findings set forth herein constitute the Court's findings of fact and conclusions of

law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to adversary

proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").  In making the findings of fact, the Court considered the credibility of the witnesses

based on the Court's observation of their live testimony and the rest of the evidence submitted at

trial.  The Court concludes that the Vyshedsky is entitled to a judgment that his damages are

**NON-DISCHARGEABLE** under section 523(a)(6) of the Bankruptcy Code.

## I.   BACKGROUND

On July 27, 2000, Soliman, Vyshedsky, and a third-person, Sobon, met one another at an

elevator bank in an apartment building located at 99 Hillside Avenue, New York, New York (the

"Premises"), where they all lived.  (Joint Pretrial Order at 2 (ECF Doc. # 51); Def.'s FoF ¶ 2

(ECF Doc. # 54).)  Soliman lived on the twenty-first floor (Hr'g Tr. at 16); Vyshedsky lived on

the nineteenth floor (Hr'g Tr. at 6).  Soliman and Sobon quickly got into an argument about the

order of protection that Sobon had previously obtained against Soliman.[3] (Sept. 16, 2015 Hr'g Tr. at 8, 17–18.)  Because of the order of protection, Soliman insisted that Sobon should not ride on the same elevator as him.  (Def.'s FoF ¶ 5; Hr'g Tr. at 8, 17–18.)  Soliman asked Sobon to wait for the next elevator.  A senior citizen, who also lived in the building, soon arrived at the scene.[4]  (Hr'g Tr. at 8,18.)  The presence of the senior citizen silenced the argument regarding whether Soliman and Vyshedsky should ride in the same elevator car.  (Hr'g Tr. at 18.)  Soliman, Sobon and Vydshedsky remained in the elevator while it ascended.

Vyshedsky testified that, while on the elevator, Sobon asked Vyshedsky whether he was willing to serve as a witness to the events that had unfolded (*i.e.*, that Soliman rode the elevator with Sobon, in violation of the order of the protection).  (Hr'g Tr. at 8.)  Vyshedsky agreed to corroborate Sobon's story.  (*Id.*)  Despite their close proximity in the elevator, Soliman denies hearing this conversation.  (Hr'g Tr. at 19.)  Sobon got out of the elevator on the eighteenth floor, leaving Soliman and Vyshedsky together in the elevator.  (Hr'g Tr. at 9, 19.)

What happened next is mostly disputed.  Both Vyshedsky and Soliman testified that Vyshedsky got out of the elevator on the nineteenth floor and that Soliman—despite living on the twenty-first floor—followed Vyshedsky off of the elevator.  (Hr'g Tr. at 9, 19–20.)  The encounter quickly became more heated.  (*See id.*)

Vyshedsky testified that Soliman screamed at him as Vyshedsky walked away from the elevator.  (Hr'g Tr. at 9.)  Soliman yelled "you don't know who you're dealing with here."  (*Id.*)  Vyshedsky further testified that Soliman used vulgar and obscene language towards him and, while Vyshedsky's back was turned, Soliman charged him and slammed him against a wall,

---

[3]      On July 5, 2000, Soliman assaulted Sobon (the "Sobon Assault").  ("Complaint," ECF Doc. # 1 ¶¶ 9, 11.)  As a result of the Sobon Assault, an order of protection was issued against Soliman.  (Joint PT Order at 2; Pl.'s FoF ¶ 2 (ECF Doc. # 52).)

[4]      Soliman and Vyshedsky testified that the senior citizen rode the elevator with the three men.  The senior citizen did not testify at trial.

grabbed him by the throat, forcefully bit down on his nose, and spat on his face numerous times. (*Id.*)

Soliman, on the other hand, testified that he followed Vyshedsky off of the elevator to explain the situation with Sobon. (Hr'g Tr. at 20.) However, for reasons unknown to Soliman, Vyshedsky turned around and, unprovoked, spat in Soliman's face twice. (*Id.*) Soliman admits that he used profanity against Vyshedsky, as Vyshedsky walked away from Soliman. (*Id.* at 21.) When Vyshedsky was approximately 30 feet down the hall, Soliman testified that Vyshedsky turned around, facing in Soliman's direction, brandished a knife, and began walking towards Soliman. (*Id.* at 21–22.) Soliman then "ran towards [Vyshedsky]" and struggled with Vyshedsky to restrain him up against a wall. (*Id.* at 23.) As Soliman restrained Vyshedsky with both hands, Vyshedsky pointed the knife towards him. (*Id.* at 23–24.) Soliman responded by biting Vyshedsky's nose. (*Id.* at 24.) Soliman testified that while he was biting down on the Vyshedsky's nose, he told Vyshedsky to "stop." (*Id.*) Vyshedsky nodded his head in agreement, which allowed the two men to break free from one another. (*Id.*) Vyshedsky testified that he did not have a knife. (*Id.* at 10.)[5]

Soliman was arrested for the Assault, and an order of protection was issued against Soliman (the "Vyshedsky Protection Order"), requiring him to stay away from Vyshedsky. (Pl.'s FoF ¶¶ 6–7.) On March 7, 2001, Soliman pled guilty to assault in the third degree, a misdemeanor. (*See* the "Prior Opinion," ECF Doc. # 42 at 5.) In his plea allocution, Soliman admitted that he assaulted Vyshedsky by biting his nose. (*Id.*) The plea allocution does not mention self-defense.

---

[5]     While Vyshedsky and Soliman did not stand side-by-side in the courtroom, the Court saw both of them clearly: Soliman is considerably taller and more solidly built than Vyshedsky, who is short, with a small frame.

On July 5, 2001, Vyshedsky filed a civil action in New York State Supreme Court seeking damages for assault and battery. (*Id.*) The case was transferred to the Civil Court on February 6, 2004. (*Id.*) After Soliman and his counsel failed to appear for either the scheduled trial, or the subsequent damages inquest, the court conducted the Inquest. (*Id.*) On July 21, 2011, the Civil Court entered the Judgment against Soliman in the amount of $110,695. (*Id.*) The judgment was not appealed, vacated, or modified, and is now final.

On October 30, 2012, Soliman filed a voluntary petition for relief under chapter 7. (Case No. 12-14444, ECF Doc. # 1.) The Debtor moved for relief from the automatic stay to seek to have the state court default judgment vacated (the "Lift Stay Motion," ECF Doc. # 12, Case No. 12-14444) and the Court entered an *Order Granting Debtor's Motion for Relief From Automatic Stay to Vacate Default Judgment* (the "Order," ECF Doc. # 17, Case No. 12-14444). The Debtor further filed a *Motion to Stay Adversary Proceeding* (the "First Stay Motion," ECF Doc. # 18). The motion was unopposed, and on October 10, 2013, the Court entered the *Order Granting Motion to Stay Adversary Proceeding* (the "Stay Order," ECF Doc. # 21), staying the Adversary Proceeding for six (6) months and requiring the Defendant to commence an action in state court to seek to avoid the Judgment.

On October 21, 2013, the Soliman moved to vacate the default judgment in Civil Court. Vydshedsky opposed the Soliman's motion. (Prior Opinion at 6.) On December 13, 2013, the Civil Court denied the Soliman's motion. (*Id.*) The Civil Court found that the Soliman failed to meet his burden of showing that he (1) had a reasonable excuse for his failure to appear in the original proceeding and (2) has a potentially meritorious defense to the underlying action. The Civil Court found that, even if the Soliman could demonstrate a reasonable excuse for his failure to appear at the Inquest, he cannot establish any potentially meritorious defense to the action

because of his guilty plea.  Vyshedsky submitted to the Civil Court the plea allocution transcript

in which Soliman admitted that he assaulted Vydshedsky on July 27, 2000 by biting into his

nose.  (*See* Vyshedsky Aff. Ex. D; Moss Decl. Ex. A.)  The Civil Court determined that the

guilty plea should be given collateral estoppel effect in the subsequent civil proceeding.

      This Court denied Debtor's second stay motion on April 10, 2014, and directed the

parties to file their cross-motions for summary judgment.[6]  On September 4, 2014, the Court

denied both summary judgment motions without prejudice, finding that an evidentiary hearing

was required on the issue "whether Soliman's actions were 'a deliberate and intentional injury'

to Vyshedsky—'not merely a deliberate or intentional act that leads to injury.'"  (Prior Opinion

at 4 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).)

## II.    DISCUSSION

### A.    Section 523(a)(6): The Legal Elements

      A bankruptcy discharge covers all prepetition debts, other than debts expressly excepted

from discharge by section 523 of the Bankruptcy Code.  Consistent with the Bankruptcy Code's

fresh start policy, courts nevertheless construe the exceptions enumerated in section 523

narrowly against the creditor in favor of the debtor.  *Soliman*, 523 B.R. at 190–91; *Lubit v. Chase

(In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007) (citing *Nat'l Union Fire Ins. Co. v.

Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996)).  As relevant to the facts in this

case, section 523(a)(6) of the Bankruptcy Code excepts from discharge a debt "for willful and

---

[6]    *See* Plaintiff's motion for summary judgment (the "Plaintiff's Motion," ECF Doc. # 32).  In support of the
Plaintiff's Motion, the Plaintiff filed his affidavit (the "Vyshedsky Aff.," ECF Doc. # 33), the Plaintiff's Statement
of Undisputed Material Facts in Support of Motion for Summary Judgment (the  "Plaintiff's Facts," ECF Doc. # 34),
and  the Declaration of Gilbert A. Lazarus, Esq. (the "Lazarus Decl.," ECF Doc. # 35).  The Debtor filed a cross-
motion for summary judgment (the "Debtor's Motion," ECF Doc. # 36).  In support of the Debtor's Motion, the
Debtor filed the Declaration of Tina Moss (the "Moss Decl.," ECF Doc. # 36) and the Debtor's Statement of
Undisputed Facts (the "Debtor's Facts," ECF Doc. # 38).

malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6).[7] "The terms 'willful'

and 'malicious' are separate elements, and both elements must be satisfied." *In re Greene*, 397

B.R. 688, 693 (citing *Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 340 (Bankr.

S.D.N.Y. 1999)). "The willful element is satisfied when a person deliberately causes an injury to

another, while the malicious prong requires that such action be unjustified or without just cause."

*In re Greene*, 397 B.R. at 695. The plaintiff bears the burden of proving that the debtor acted

willfully and maliciously by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279,

291 (1991).

        *a. Willful*

        To establish that a debtor acted willfully under section 523(a)(6), the plaintiff must

demonstrate that the injury in question was "a deliberate or intentional injury, not merely a

deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62

(1998); *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau*, 523 U.S.

at 61–62). A willful injury does not include "recklessly or negligently inflicted injuries."

*Kawaauhau*, 523 U.S. at 64. Rather, a person intends to cause injury when he "desires to cause

consequences of his act, or . . . he believes that the consequences are substantially certain to

result from it." RESTATEMENT (SECOND) OF TORTS § 8A (1965). "[T]o satisfy the 'willful'

element of Bankruptcy Code [section] 523(a)(6), the plaintiff must prove by a preponderance of

the evidence that the debtor actually intended to injure the victim, or engaged in conduct that was

substantially certain to cause injury." *In re Margulies*, 2013 WL 2149610, at *3 (citing

*Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012); *Maxfield v. Jennings (In re

Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012); *Morris v. Brown (In re Brown)*, 489 F. App'x

---

[7]      The word "entity" is broader and inclusive of the word "person." 11 U.S.C. § 101(15) (stating that "[t]he term 'entity' includes person, estate, trust, governmental unit, and United State trustee").

890, 895 (6th Cir. 2012); *Guerra & Moore Ltd. v. Cantu (In re Cantu)*, 389 F. App'x 342, 344–

45 (5th Cir. 2010); *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206

(9th Cir. 2010); *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008); *In re

Granoff*, 250 F. App'x 494, 495 (3d Cir. 2007); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125,

1129 (10th Cir. 2004)).

     *b.   Malicious*

   To establish that a debtor acted maliciously, the plaintiff must prove that the debtor's act

was "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or

ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996).  In

determining whether a debtor acted maliciously, courts will consider the totality of the

circumstances.  *Id.* at 88 (stating that "[i]mplied malice may be demonstrated 'by the acts and

conduct of the debtor in the context of [the] surrounding circumstances'" (quoting *First Nat'l

Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir. 1995))).  Malice is implied

when "anyone of reasonable intelligence knows that the act in question is contrary to commonly

accepted duties in the ordinary relationships among people, and injurious to another."  *Navistar

Fin. Corp. v. Stelluti (In re Stelluti)*, 167 B.R. 29, 33 (Bankr. S.D.N.Y. 1994) (internal quotation

marks omitted), *aff'd*, 94 F.3d 84 (2d Cir. 1996).

     *c.   Soliman Acted Willfully and Maliciously When He Assaulted Vydshedsky*

   There was no real dispute at trial that Soliman acted willfully when he bit Vyshedsky's

nose in their altercation.  In fact, in Soliman's pretrial brief (Def.'s PT Br. at 4), and later at trial

(Sept. 16, 2015 Hr'g Tr. at 22–24), Soliman attempted to justify his actions by claiming that he

bit the Vyshedsky's nose in self-defense.  This is tantamount to an admission that Vyshedsky's

injury was willfully caused.  *See In re Greene*, 397 B.R. at 695 (citing to *In re Taylor*, 322 B.R.

306, 309 (Bankr. N.D. Ohio 2004) (raising the self-defense justification in effect constitutes an

admission that the underlying act was done willfully)).  Irrespective of the Debtor's self-defense

claim, the evidence demonstrates that Soliman's actions were willful.  It is indisputable that

when a person pins a victim up against a wall and uses his teeth to forcefully bite down on the

victim's flesh, that the person's actions were either intended to injure the victim or were

substantially certain to cause injury.

     The facts at trial also establish that Soliman acted maliciously.  As described above, the

malicious prong of section 523(a)(6) requires that an action be wrongful _and_ without just cause

or excuse.  There is no dispute that Soliman acted wrongfully when he bit Vyshedsky's nose in

their altercation.  Photographs of Vyshedsky taken after the Assault clearly show that the

Vyshedsky suffered severe injuries from the Assault.  (Pl.'s Ex. 3.)  Vyshedsky's nose contained

deep bite marks along the bridge of his nose reaching down to the columella.  The bite marks,

which spanned over three-quarters of the columella, required numerous stitches.  Absent a valid

self-defense claim, there is no just cause or excuse for Soliman's actions.  Moreover, in light of

the self-defense claim, "it cannot be overlooked that by raising an affirmative defense . . .

[Soliman] has ostensibly admitted that he acted with malice . . . ," thus satisfying the malicious

prong of section 523(a)(6).  _In re Taylor_, 322 B.R. at 309.  Accordingly, the crux of the issue

turns on whether Soliman is precluded from asserting self-defense, and even if he may do so,

whether he has established self-defense by a preponderance of the evidence.

### B.    Self-Defense Is an Affirmative Defense

     Unless preclusion principles bar assertion of self-defense, a debtor may raise self-defense

as an affirmative defense to a non-dischargeability claim under section 523(a)(6).  _See In re_

_Taylor_, 322 B.R. at 309 ("Acts properly taken, therefore, in self-defense provide a valid defense

to an action brought under § 523(a)(6); this has always been understood."); _see also In re_

*Greene*, 397 B.R. at 695 (recognizing that a debtor's claim of self-defense could "provide[]

justification or cause for [the debtor's] willful action").  A self-defense claim is an affirmative

defense and, as such, the debtor bears the burden of proof with respect to self-defense.  *In re*

*Taylor*, 322 B.R. at 309.

     In *Greene*, the court concluded that "[i]n the State of New York, a guilty plea is accorded

the same preclusive effect as a conviction after a trial.  Although the elements of the crime have

not been litigated, the issues have necessarily been judicially determined by the plea.

Furthermore, a defendant pleading guilty has had a full and fair opportunity to litigate his case,

even though he has elected not to contest the accusations.  He should not expect the courts to

look behind convictions based on such pleas in order to relieve [him] from civil consequences

which may follow."  397 B.R. at 694 (internal quotation marks and citations omitted).  Since

New York recognizes self-defense as a possible defense to a criminal assault charge, a guilty

plea precludes a criminal defendant from later asserting self-defense in a civil assault case, or as

here, as a defense to a denial of discharge.[8]  N.Y. PENAL LAW § 35.15; *see also In re Graham*,

455 B.R. 227 (Bankr. D. Colo. 2011) (stating that the "[d]efendant's guilty plea . . . ha[d] the

consequence of waiving the affirmative defense of self-defense"); *In re Granoff*, No. 05-33028,

2006 WL 1997408 (Bankr. E.D. Pa. June 6, 2006) (stating that "the criminal conviction is

preclusive on the issue of self-defense as a justification for his conduct"); *Cf. Grayes v. DiStasio*,

166 A.D.2d 261, 262–63 (1990) (stating that "a criminal conviction, whether by plea or after

trial, is conclusive proof of its underlying facts in a subsequent civil action and collaterally

estops a party from relitigating the issue").

---

[8]     As already stated, in denying the motion to vacate the default judgment and applying collateral estoppel,
the Civil Court concluded that Soliman could not establish any potentially meritorious defense to the action because
of his guilty plea.

But even if preclusion does not bar the assertion of self-defense here, the Court concludes that Soliman failed to establish by a preponderance of the evidence the necessary elements for self-defense under both state and federal standards.

### a.   Self-Defense Under Federal Common Law

In federal courts, the law pertaining to self-defense is a matter of federal common law. *In re Greene*, 397 B.R. at 695 (citing to *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir.2008); *United States v. Butler*, 485 F.3d 569, 572 (10th Cir. 2007)).

> [The Tenth Circuit has held] that a claim of self-defense requires a party to show the following:  (i) that he was under an unlawful, imminent and impending threat of death or serious bodily injury; (ii) that he had not recklessly or negligently placed himself in such a situation; (iii) that he had no reasonable, legal alternative to violating the law—a chance both the refuse to do the criminal act and to avoid the threatened harm; and (iv) that a direct causal relationship would have been reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*In re Greene*, 397 B.R. at 695 (citing *United States v. Butler*, 485 F.3d 569 (10th Cir. 2007)).

Soliman's actions fail under the four prongs of the self-defense doctrine as construed under federal common law.  First, Soliman was not under imminent threat of death or serious bodily injury.  There is no evidence to substantiate Soliman's allegation that the Vydshedsky brandished a knife.  Vydshedsky denied it, and the Court credits his testimony.  Moreover, even if Vyshedsky had brandished a knife during the Assault, Vyshedsky would have been standing approximately thirty feet away—the length of two minivans—from Soliman when Vyshedsky allegedly brandished a knife.  Soliman was not under *imminent* threat of death or serious bodily injury, under these facts.  He could have safely retreated and avoided the Assault.

Second, the sequence of events demonstrates that Soliman placed himself in the situation. Soliman (i) rode on the elevator with Sobon and Vyshedsky, despite Soliman's argument with

Sobon; (ii) followed Vyshedsky off of the elevator; and (iii) ran *towards* Vyshedsky when

Vyshedsky allegedly brandished a knife from thirty feet away, if Soliman's version of events is

credited (which it is not).

Third, once Soliman followed Vyshedsky off of the elevator, Soliman could have avoided

any confrontation by retreating instead of confronting Vyshedsky.  If Vydshedsky drew a knife

from thirty feet away, Soliman did not need to bite Vyshedsky's nose in self-defense.

Finally, there is no reasonable causal relationship between Soliman's act and the

avoidance of the threatened harm.  Even if Soliman's version of the events is credited, the bite

was not a reasonable use of force in the totality of the circumstances.  *Davis v. Strack*, 270 F.3d

111, 129 (2d Cir. 2001).

### b.  Self-Defense Under New York Law

Under New York law, a person is permitted to use physical force only *to the extent*

*reasonably necessary* to defend oneself from the *imminent* use of unlawful ordinary physical

force.  N.Y. PENAL LAW § 35.15 (emphasis added).[9]  Accordingly, "the force permitted [in self-

defense] is related to the degree of force reasonably believed necessary to repel various threats."

*Collins v. Artus*, No. 08 Civ. 1936(PKC) (JCF), 2009 WL 2633636, at *5 (S.D.N.Y. Aug. 26,

2009) (internal quotation marks and citation omitted).  For example, a person may use *deadly*

*force* to defend against another's use of *deadly force*, subject to the circumstances.  *See id.*

Deadly physical force is defined very broadly in the Penal Law as "physical force which,

under the circumstances in which it is used, is readily capable of causing death or other *serious*

*physical injury*."  N.Y. PENAL LAW § 10.00(11) (emphasis added).  Serious physical injury is

defined as "physical injury which creates a substantial risk of death, or which causes death or

---

[9]      New York's stance on the justification of self-defense has been recognized as "likely" different "in various
respects from the less precisely formulated common-law rules followed by federal courts."  *United States v.*
*Jackson*, 351 F. Supp. 2d 108, 115 (S.D.N.Y. 2004).

serious and protracted disfigurement, protracted impairment of health or protracted loss or

impairment of the function of any bodily organ." N.Y. PENAL LAW § 10.00(10). As a matter of

law, under New York law, "the use of a knife constitutes deadly physical force." *In re Greene*,

397 B.R. at 696.

A duty to retreat, under New York law, arises in the context of self-defense to repel

deadly force.[10] *Bulla v. Lempke*, No. 06 Civ. 1156 (JSR) (GWG), 2006 WL 2457945 (S.D.N.Y.

Aug. 25, 2006) ("In New York, before using deadly physical force in self-defense, a defendant

has a duty to retreat if he or she may do so in complete safety. However, *there is no duty to

retreat before defending oneself with ordinary physical force*." (emphasis added)). Under N.Y.

Penal Law § 35.15(2)(a), deadly physical force cannot be used if retreat can be made in complete

safety. And such duty does "not arise until the point at which [the other person's use of] deadly

physical force against him is imminent." *Davis v. Strack*, 270 F.3d at 126 (internal quotation

marks and citation omitted).

In evaluating an individual's claim of self-defense, a court must determine the

"reasonableness of a defendant's fear" and base such a determination "on the circumstances

facing a defendant or his situation." *Id.* at 129 (citations omitted). This analysis includes

consideration of "any relevant knowledge the defendant had about that person, including the

perceived assailant's physical attributes and any prior experiences [the debtor] had which could

---

[10]        "New York is more strict [sic] on the obligation to retreat than other states." *Holden v. Miller*, No. 00 Civ.
0926 (RMB) (AJP), 2000 WL 1121551, at *14 (S.D.N.Y. Aug. 8, 2000) ("Among the states, there is a difference of
opinion as to the necessity of retreating before one is justified in taking the life of an assailant. In some
jurisdictions, the view is taken that retreat is not required in the case of a felonious attack, but that where the attack
is without felonious intent, the person attacked may not stand his or her ground and kill the adversary if there is any
means of escape open. For the most part, New York adheres to this position, although the felonies to repel which
deadly physical force may be used without obligation to retreat are limited by statute. In other jurisdictions,
however, the right to stand one's ground is given broader scope." (internal quotation marks omitted) (quoting 35
N.Y. JUR. 2D, *Defenses to Criminal Liability* § 3484 (1995)).

provide a reasonable basis for a belief that [the] person's intentions were to injure . . . him." *Id.* (internal quotation marks and citation omitted).

Soliman relies on a self-defense claim to justify the injury that he caused to Vyshedsky. However, Soliman may only invoke a self-defense claim to the extent that he faced actual or imminent harm of *physical force* during the course of the altercation. The Court credits Vydshedsky's testimony (and rejects Soliman's testimony) that Vyshedsky did not threaten Soliman with a knife. Aside from Soliman's allegation that Vyshedsky brandished a knife, there is no evidence that Vyshedsky used *any* force against Soliman, let alone deadly force. Given that the Court finds that Vyshedsky did not use or attempt to use physical force against Soliman, there is no justification for Soliman's actions.

Notably, even if the Court were to find that Vyshedsky brandished a knife during the Assault, Soliman's self-defense claim nevertheless fails because, among other things, there was no imminent threat of harm.

> i. The Facts and Circumstances Do Not Demonstrate that There was a Reasonable Basis to Believe that Soliman was in Threat of Imminent Harm

The Court finds that Soliman did not prove that he faced imminent harm.[11] A condition precedent to the use of a self-defense claim is that a person must face "the use or imminent use of unlawful physical force." N.Y. Penal Law § 35.15(1); *see also People v. Wimberly*, 19 A.D.3d 518, 519 (2d 2005) (stating that "[j]ustification is not a defense to the use of deadly

---

[11] Presuming that Soliman faced actual or imminent use of deadly force against him, the validity of Soliman's self-defense claim would have been dependent on whether Soliman had a duty to retreat. As described herein, under New York law, retreat is not a condition precedent of the use of ordinary physical force in self-defense; rather, retreat is a condition precedent to the use of deadly physical force in self-defense. Given that Soliman did not face a threat of imminent harm and therefore does not have right to rely on justification as a defense, the Court does not reach the question of whether Soliman's actions constituted ordinary or deadly physical force. However, the Court notes that there is case law to support that the act of biting a person's facial extremity can constitute deadly physical force, since it is readily capable of causing serious physical injury. *See, e.g., People v. Dingley*, 50 A.D.2d 361 (3d Dept. 1976) (holding that a bite that removed portion of ear constituted deadly physical force), *rev'd on other grounds*, 42 N.Y.2d 888 (1977).

physical force unless the defendant reasonably believed that the victim was about to use deadly physical force against her and she was unable to retreat safely"). Accordingly, there can be no self-defense claim where there is no actual or imminent harm.

Soliman testified that Vyshedsky was approximately thirty feet away when he allegedly brandished the knife. Under these facts, the Court finds that Soliman was not under imminent threat of death or serious bodily injury. Accordingly, Soliman does not have the right to rely on justification as defense.

ii.    <u>Soliman's Actions Were Not Reasonable Under the Circumstances</u>

Soliman's actions do not support a self-defense claim under New York law. As described above, New York's self-defense standard is largely based on the reasonableness of the defendant's fear and actions. Vydshedsky and Soliman testified that they were strangers before the date of the Assault. As such, Soliman would have had little to no relevant knowledge regarding Vyshedsky's attributes, other than those attributes that Soliman could reasonably perceive on the day of Assault (*e.g.*, Vyshedsky's physical characteristics and general demeanor).

Soliman's chosen course of action—biting Vyshedsky's nose—was not reasonable under the circumstances. Based on the Court's observations, there are notable differences in the physique and demeanor of Vydshedsky and Soliman. Vydshedsky is of short to average stature and thin build; Soliman is much taller and powerfully built and with military training. Based on the physical differences between the two men, it is questionable whether Soliman's alleged fear of Vyshedsky was reasonable. Soliman initiated each escalation of the altercation; his actions were not responses made in self-defense, but rather served to incite the physical confrontation.

## III. CONCLUSION

Based on the findings of fact and conclusions of law, the Court concludes that Soliman's

judgment debt owed to Vydshedsky is not dischargeable.  Plaintiff's counsel shall submit a

proposed form of Judgment on presentment.

**IT IS SO ORDERED**.

Dated: October 22, 2015
      New York, New York

                                      ___*Martin Glenn*___
                                      MARTIN GLENN
                         United States Bankruptcy Judge